# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1254V
Filed: November 26, 2024

| | |
|---|---|
| WILLIAM BARTOSZEK,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner |

*Anne Carrion Toale*, mctlaw, Sarasota, FL, for petitioner.
*Neil Bhargava*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 14, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.* (2012) ("Vaccine Act").[2]  (ECF No. 1.)  Petitioner alleged that he suffered Guillain Barre syndrome ("GBS") caused by his July 13, 2016 Prevnar 13 pneumococcal vaccination. (*Id.*)  On April 3, 2024, petitioner moved for an award of interim attorneys' fees and costs totaling $412,458.49, including $320,101.70 in attorneys' fees and $92,356.79 in attorneys' costs.  (ECF No. 128.)  The motion was fully briefed.[3] (ECF Nos. 129-31.)

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be to the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

[3] Petitioner also filed a separate motion seeking to amend his motion for an award of interim attorneys' fees and costs to correct the mailing address for any resulting check given that petitioner's counsel's office had moved.  (ECF No. 131.)  No response was filed.  Petitioner's motion at ECF No. 131 to amend the prior motion at ECF No. 128 is hereby GRANTED.

1

Subsequently, petitioner was found entitled to compensation on August 27, 2024.  (ECF No. 133.)  For the reasons discussed below, petitioner's motion is GRANTED and interim attorneys' fees and costs are awarded in the reduced amount of $375,383.41.

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa-15(e)(1)(A)-(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  In this case, petitioner has been found entitled to compensation.[4]  (ECF No. 133.)  Moreover, respondent does not dispute this petition had a reasonable basis, instead deferring to the special master on that point.  (ECF No. 129, p. 2.)

Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act.  *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1374-75 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352.  In *Avera*, the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  515 F.3d at 1352.  In *Shaw*, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d at 1375.  Here, I exercise my discretion to award interim attorneys' fees and costs, given the length of time this case has been pending and the amount at issue.  Respondent does not object, instead deferring to the special master with respect to whether an award of interim attorneys' fees is appropriate.  (ECF No. 129, p. 2.)

It is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1347-48.  This is a two-step process.  *Id.*  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Id.* at 1348.

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work.  *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).  Such applications should not include hours that are "excessive, redundant, or otherwise

---

[4] At this juncture the ruling itself is still potentially subject to challenge on review and/or appeal; however, the analysis contained therein also serves to substantiate that the petition had a reasonable basis.

unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Attorneys' costs must be reasonable as well. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).

The undersigned has reviewed the attorney billing records submitted with petitioner's request. (ECF No. 128-1.) I do not see any reason to reduce the hourly rates requested. However, in the undersigned's experience, while this case was extensively litigated, the request appears high for a case of this type. A significant reason for that appears to be the unusually high number of attorneys that participated in the case. Eight different attorneys participated in this case at various stages. Even accounting for the fact that the initial counsel of record departed the firm, this is excessive and inefficient. Special Masters have previously disfavored having multiple attorneys working on the same case and have reduced fees accordingly. *See, e.g.*, *Austin ex rel. Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Soto ex rel. Soto v. Sec'y of Health & Human Servs.*, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011). Accordingly, I find that a 5% reduction is appropriate. This reduces the requested attorneys' fees from $320,101.70 to $304,096.62.

Regarding costs, petitioner has incurred unreasonably duplicative expert costs. Petitioner initially relied on a neurology opinion by Dr. Kazim Sheikh, M.D., which did address a theory of causation.[5] (ECF No. 29.) A Rule 5 conference was subsequently held, which raised questions for Dr. Sheikh regarding *Althen* prong one, but which did not suggest the theory of causation was beyond Dr. Sheikh's expertise or that a separate immunology opinion was necessary. (ECF Nos. 46, 48.) Petitioner then advised for the first time in a motion for extension of time that an immunology expert had been retained. (ECF No. 50.) Petitioner paid Dr. Gershwin $27,375.00 ($3,000.00 as of 3/3/2020; $15,250.00 as of 5/5/2020; and $7,250.00 and $1,875.00 as of 2/9/2021) for an expert opinion setting forth a further immunologic explanation of petitioner's theory of causation as originally set forth by Dr. Sheikh. However, after petitioner was later given an opportunity to develop the record of this case in light of the undersigned's analysis in another Prevnar/GBS case (*Pierson*), petitioner advised that

---

[5] Petitioner filed a separate memorandum seeking to substantiate an increase in the allowable hourly rate for petitioner's neurology expert, Kazim Sheikh, M.D. (ECF No. 128-6.) Petitioner indicates that Dr. Sheikh has previously been compensated at a rate of $500 per hour since 2015; however, petitioner requests that this rate be updated to $550 an hour for work performed in 2022 and 2023. (*Id.* at 1-2.) Especially because it is unopposed (*Compare* Vaccine Rule 13(a)(3), *with* ECF No. 129), I find petitioner's request to be reasonable.

3

he had retained a new immunologist.  (ECF Nos. 74-75.)  Petitioner then paid Dr. Steinman, the expert who opined in *Pierson*, $25,300.00 ($5,500.00 as of 3/3/2022; and $19,800.00 as of 2/27/2024) to support a different immunologic theory of causation, the same theory as presented in *Pierson*.  In connection with his initial report, Dr. Steinman billed 14 hours reviewing the complete record evidence in the case, including all of the preceding expert reports in the case, and a further 15.75 hours drafting his initial report.  (ECF No. 128-2, p. 71.)  However, the resulting report is effectively limited to discussing general causation in a manner substantially the same as he had previously presented in *Pierson* and without any mention whatsoever of the other expert opinions that he had billed to review.   His analysis of the facts of the case was essentially limited to adopting the conclusions stated in my prior Rule 5 order.  (ECF No. 78-2.)

With regard to expert costs, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (second alteration in original) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded in part*, 24. Cl. Ct. 482 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)).  Counsel have an obligation to monitor expert fees and costs and to incur only those costs that are reasonable, an obligation that may warrant conferral with the court.  *Perreira v. Sec'y of Health & Human Servs.*, No. 90-847V, 1992 WL 164436, at *4-5 (Fed. Cl. Spec. Mstr. June 12, 1992) (explaining that "[t]his court has continuously warned counsel of their obligation to monitor expert fees. . . . [A]n unreasonable expert fee is not converted into a reasonable fee simply because it was prepaid."), *mot. for rev. denied*, 27 Fed. Cl. 29 (1992), *aff'd*, 33 F.3d 1375 (Fed Cir. 1994); *see also Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *5 (Fed. Cl. Spec. Mstr. June 15, 2009) (advising that "petitioner should not hesitate to bring to the court's attention for guidance any unusual fee or costs which would foreseeably be objected to"), *mot. for rev. denied*, 106 Fed. Cl. 600 (2009), *aff'd*, 406 F. App'x 479 (Fed. Cir. 2011).  "[T]he subjective decision to switch experts midstream, whatever the strategic underpinning, comes with associated costs that are not necessarily reasonably chargeable to the Program."  *Truett v. Sec'y of Health & Human Servs.*, No. 17-1772V, 2024 WL 795176, at *3 n.3 (Fed. Cl. Spec. Mstr. Jan. 29, 2024) (reducing the hours billed by a second orthopedic expert to avoid redundant billing where petitioner had already presented a complete orthopedic opinion).

In this case, petitioner was never encouraged to file a report by Dr. Gershwin in the first place, given Dr. Sheikh's initial opinion, and he later effectively abandoned Dr. Gershwin's opinion in favor of a differing theory presented by Dr. Steinman.  (ECF No. 76 (confirming discontinuance of Dr. Gershwin's participation); ECF No. 119-1 (petitioner's motion for a ruling on the record including no mention of Dr. Gershwin).)  Thus, as can be seen from the ruling on entitlement, Dr. Gershwin's opinion did not meaningfully contribute to the resolution of this case as a result of petitioner's strategic decision. (ECF No. 133, p. 10 (explaining that "[b]ecause Drs. Gershwin and Chaudhry were replaced as experts by Drs. Steinman and Callaghan respectively, their opinions will not be summarized.  I have, however, considered their opinions and concluded that

nothing in their opinions would affect the outcome").)  Dr. Steinman compounded this issue by engaging in unreasonable billing to review the entire record of the case despite producing a report that merely repeated his previously-generated general causation opinion without any meaningfully engagement with the particulars of this case.  Although petitioner was provided preliminary guidance that allowed petitioner to develop the record in light of the prior *Pierson* decision, nothing in that guidance contemplated that petitioner would change experts, and petitioner did not seek to confer with the court regarding the reasonableness of incurring these redundant expert costs.  And while petitioner cannot necessarily be faulted for embracing a previously successful theory, it is also the case that Dr. Gershwin's opinion was never adjudged to be deficient, meaning that Dr. Steinman's opinion cannot be said to have been a necessity.  Moreover, given the circumstances of this case, petitioner should have in any event ensured that Dr. Steinman's participation was targeted and that his billing reflected the fact that the bulk of his work product originated from a prior case for which he had separately billed the Program.  Accordingly, I find that, due to this unnecessary duplication of expert costs, the costs associated with petitioner's overall expert immunology presentation should be reduced by 40%, a reduction of $21,070.00.  This reduces the requested costs from $92,356.79 to $71,286.79.  The requested costs are otherwise reasonable and sufficiently documented.

**Accordingly, the undersigned awards the total of $375,383.41[6] as a lump sum in the form of a check jointly payable to petitioners and petitioners' counsel, Anne Toale, Esq.[7]**

The clerk of the court shall enter judgment in accordance herewith.[8]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[6] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, including "advanced costs" as well as fees for legal services rendered.  Furthermore, § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

[7] The check shall be mailed to mctlaw, at 1515 Ringling Blvd., Suite 700, Sarasota, FL 34236.

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.